# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

--------

No. 15-50180

--------

United States Court of Appeals
Fifth Circuit

**FILED**

June 14, 2016

Lyle W. Cayce
Clerk

In the Matter of:  JOE JESSE MONGE; ROSANA ELENA MONGE,

                                        Debtors.


JOE JESSE MONGE; ROSANA ELENA MONGE,

                                        Appellants,

versus

ALICIA ROJAS; FRANCISCO JAVIER JAYME,

                                        Appellees.


--------

Appeal from the United States District Court
for the Western District of Texas

--------


Before SMITH, BARKSDALE, and COSTA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Joe and Rosana Monge appeal the district court's judgment that adopted in part the bankruptcy court's proposed findings of fact and conclusions of law. Finding no error, we affirm.

This adversary matter arises out of the Monges' Chapter 11 bankruptcy

No. 15-50180

proceeding.[1]  Aside from defunct corporations, the remaining defendants are Alicia Rojas and her husband, Francisco Jayme.  Rojas is an attorney and licensed mortgage broker who, from late 2005 through 2008, was a mortgage broker for the Monges.  Jayme is a licensed real estate agent who, during the same period, served as a real estate agent for the Monges.  The adversary proceeding concerns mainly the sale and leasing of a house in New Mexico known as the Thoroughbred Property.

Jayme originally obtained title to the Thoroughbred Property in 2002 through a general warranty deed filed in Dona Ana County, New Mexico.  Almost immediately, however, he went into arrears on the property.  To avoid foreclosure, he filed a series of four Chapter 13 bankruptcy cases in New Mexico and Texas.  Each was dismissed, and Jayme's mortgage lender, Citibank, foreclosed on November 1, 2005.  A New Mexico state court approved the foreclosure sale on January 9, 2006, and a Special Master's deed confirming the foreclosure (effective to November 1, 2005) was filed and recorded on January 19, 2006.  That deed noted that Jayme retained a one-month statutory right to redeem the foreclosed property.

Sometime in late 2005, the Monges became acquainted with Rojas and Jayme and, in December 2005, executed a purchase agreement to buy the Thoroughbred Property from Rojas and Jayme for $775,000.  To finance the purchase, the Monges obtained from America's Wholesale Lender a mortgage loan for $697,000 that was arranged by Rojas as the mortgage broker.  The closing took place on February 3, 2006.  A general warranty deed conveying the property from Jayme to the Monges, along with the Thoroughbred mortgage, was first recorded in Dona Ana County on February 6, 2006.

_____

[1] We base our summary of the facts on the findings adopted by the district court and not challenged on appeal.

No. 15-50180

Jayme used the proceeds to redeem the Thoroughbred Property from Citibank on February 8, 2006, just one day before his statutory right of redemption was set to expire. It was not until June 27, 2006, however, that Citibank executed a quitclaim deed conveying the property back from Citibank to Jayme. The quitclaim deed was recorded in Dona Ana County on July 28, 2006. That same day, shortly after the quitclaim deed was recorded, the general warranty deed from Jayme to the Monges and the Thoroughbred mortgage originally recorded on February 6, 2006, were re-recorded.

In theory, the Thoroughbred Property was being sold to the Monges so that Rojas and Jayme could obtain an estimated $300,000 in equity from the sale. Rojas and Jayme planned to use that equity to purchase and develop the Country Cove Subdivision, a new real estate venture between them and the Monges. The anticipated equity, however, never materialized, because Jayme ended up receiving zero dollars in cash from the sale. Partially as a result, the Country Cove venture was a failure.

On the same day as the closing of the sale of the Thoroughbred Property to the Monges, i.e., on February 3, 2006, Rojas signed a residential lease with an option to purchase the Thoroughbred Property. Under the terms of the agreement, Rojas would lease the property from the Monges for one year with a one-year option to purchase it. The term of the lease was from February 2, 2006, through January 31, 2007, with the rent equal to the amount of the Monges' monthly mortgage payment to America's Wholesale Lender. Rojas and Jayme, however, were unable to make most of the rental payments and have paid no rent since April 2008, despite continuing to live on the property. Rojas and Jayme never exercised the option to repurchase the Thoroughbred Property; the option expired in January 2007.

Because of Rojas and Jayme's failure to pay rent, the Monges eventually

No. 15-50180

defaulted. To avert foreclosure on the Thoroughbred Property, they filed for bankruptcy in 2009. They initiated the instant adversary proceeding against Rojas and Jayme in June 2010. After a bench trial, the bankruptcy court on September 5, 2014, submitted the proposed findings and conclusions (178 pages) to the district court for *de novo* review. On September 18, the Monges timely filed objections. Rojas and Jayme did not respond. On January 27, 2015, the district court overruled all of the objections, adopted the proposed findings in part, and entered a final judgment from which the Monges appeal.

## I.

We review "the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court."[2] Here, however, the bankruptcy court submitted only *proposed* findings of fact and conclusions of law to the district court pursuant to 28 U.S.C. § 157(c)(1), so the district court did not sit as an appellate court.[3] Unlike the district court, then, this court does not review the bankruptcy court's proposed findings of fact and conclusions of law *de novo* but, instead, we review the district court's findings of fact for clear error and its conclusions of law *de novo*.[4]

## II.

The Monges urge that the district court should have sustained their

---

[2] *First Nat'l Bank v. Crescent Elec. Supply Co.* (*In re Renaissance Hosp. Grand Prairie Inc.*), 713 F.3d 285, 294 (5th Cir. 2013) (quoting *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003)).

[3] *See* 28 U.S.C. § 157(c)(1) (requiring district court to review bankruptcy court's proposed findings of fact and conclusions of law *de novo*).

[4] *Cf. Tasch, Inc. v. Diamond Offshore Drilling, Inc.* (*In re Tasch, Inc.*), No. 01-31363, 2002 WL 1973464, at *2 (5th Cir. July 31, 2002) (reviewing, for clear error, findings of fact proposed by the bankruptcy court and adopted by the district court).

No. 15-50180

objections to the proposed findings because the objections were unopposed. Under Rule 9033(b) of the Federal Rules of Bankruptcy Procedure, each party has fourteen days to file objections to the bankruptcy court's proposed findings of fact and conclusions of law and another fourteen days to respond to objections submitted by other parties. The Monges filed their objections within the time period, but Rojas and Jayme neither filed objections nor responded to the Monges' objections. For that reason, the Monges argue, Rojas and Jayme waived their right to appeal the proposed findings, and the district court should have sustained all of the Monges' objections.

We disagree. In accordance with 28 U.S.C. § 157, Rule 9033(d) explicitly instructs the district court to "make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule" and authorizes the district court to "accept, reject, or modify the proposed findings of fact or conclusions of law." No statute or rule prohibits the district court from considering or ruling on the merits of an unopposed objection just because it is unopposed. By failing to file objections or to respond to the Monges' objections, Rojas and Jayme have waived their right to appeal the proposed findings and to present any legal issues in opposition to them. That waiver, however, has no impact on the district court's authority to consider the merits of the objections. The district court need not sustain the Monges' objections merely because they are unopposed; it may overrule the objections if they lack merit, as the district court indeed found.

### III.

The district court overruled the Monges' objection to the bankruptcy court's proposed finding that they must have realized there was no equity in the Thoroughbred Property. Of the multiple Forms HUD-1 in the record,

No. 15-50180

several show Rojas and Jayme as receiving some equity in the property. At least one HUD-1 from the day of the closing, however, shows them as receiving no cash from the sale. Under these circumstances, we cannot say that the district court clearly erred in concluding that the Monges knew or should have known, by the closing date, that Rojas and Jayme would receive no equity in the Thoroughbred Property. Consequently, we affirm the district court's adoption of the bankruptcy court's finding.

IV.

The Monges maintain that the district court erred in overruling their objection to the bankruptcy court's proposed finding that Rojas and Jayme did not misrepresent to the Monges that Rojas and Jayme expected to make their rental payments solely from the equity received through the sale of the Thoroughbred Property. The bankruptcy court, however, never proposed such a finding, the district court never adopted such a finding, the Monges never raised this issue in the district court, and the Monges do not adequately brief it on appeal. The Monges' argument is thus both meritless and waived. *See In re Bradley*, 501 F.3d 421, 433 (5th Cir. 2007).

V.

To qualify for financing to purchase the Thoroughbred Property and a separate parcel of real estate, Rojas helped the Monges complete loan applications, to each of which were attached fictitious leases. The bankruptcy court declined to propose, and the district court refused to make, a finding as to whether the Monges signed the fictitious leases. The Monges assert that this was error. We disagree, because the evidence was ambiguous, and the Monges failed to introduce expert testimony that their signatures were forged.

6

No. 15-50180

VI.

In addition to maintaining that the district court should have found that the Monges did not sign the fictitious leases, the Monges claim that the district court erred in overruling their objection to the bankruptcy court's proposed finding that it could not be determined whether Rojas and Jayme created the fictitious leases. The Monges, however, never raised this issue in their objections to the proposed findings, and the district court never considered the issue. Consequently, it has been waived. *See id.* at 433.

VII.

The district court overruled the Monges' objection to the bankruptcy court's proposed conclusion that they were not entitled to punitive damages based on violation of the automatic stay. In so doing, it committed no error.

The court may award punitive damages for willful violation of an automatic stay "in appropriate circumstances," 11 U.S.C. § 362(k)(1), which we have held requires "egregious conduct." *Young v. Repine* (*In re Repine*), 536 F.3d 512, 521 (5th Cir. 2008). In *Young*, we found the violator's conduct egregious because she violated a stay despite repeated warnings and bankruptcy court admonishments not to do so. *Id.* According to the district court, Rojas and Jayme's refusal to relinquish possession of the Thoroughbred Property was not egregious, because there was no evidence that the Monges ever notified Rojas and Jayme that their conduct violated the automatic stay as distinguished from the lease agreement. We agree, both for this reason and because Rojas and Jayme believed that they had the right to possess the Thoroughbred Property. *See* Proposed Findings, *Monge v. Rojas*, No. 10-03019-hcm, at 83 (Bankr. W.D. Tex. Sept. 5, 2014).

The Monges also assert that Rojas and Jayme willfully violated the automatic stay by attempting to "sell" the property to themselves in 2012. Like the

7

No. 15-50180

district court, we find the evidence for this alleged attempted fraudulent sale of the Thoroughbred Property to be ambiguous. For that reason and in the absence of any proposed finding on the matter by the bankruptcy court, we refuse to award punitive damages on this basis.

Finally, the Monges argue that they are entitled to punitive damages for breach of contract. Under New Mexico law, punitive damages are available for breach of contract where there is "evidence of . . . a culpable mental state or other form of overreaching, malicious, or wanton conduct." *Constr. Contracting & Mgmt., Inc. v. McConnell*, 815 P.2d 1161, 1165 (N.M. 1991). The district court concluded that the Monges had failed to meet their burden of proving a culpable mental state. We agree. It was foolish or at least overly optimistic of Rojas and Jayme to think that they could make the higher rental payments to the Monges under the lease when they could not even make the far lower monthly mortgage payments to Citibank. But foolishness or over-optimism is not a culpable mental state, and mere breach of a contract, without more, is not "overreaching, malicious, or wanton conduct." *Id.*

## VIII.

To succeed on a claim for fraud under New Mexico law, the Monges must prove three elements: (1) "a misrepresentation of a fact," (2) "known to be untrue by the maker," and (3) "made with an intent to deceive and to induce the other party to act upon it with the other party relying upon it to his injury or detriment." *Unser v. Unser*, 526 P.2d 790, 795–96 (N.M. 1974). The district court determined that two of those three elements were not satisfied. There may not "necessarily" have been a misrepresentation of a fact, because Jayme possessed a statutory right of redemption, and "even if [Rojas and Jayme] did make a false statement, there is no indication that their intent was to deceive." Order, *Monge v. Rojas*, No. EP-14-CV-385-PRM, at 25 (W.D. Tex. Jan. 27,

No. 15-50180

2015). On appeal, the Monges advance numerous arguments as to why there was in fact a misrepresentation. We decline to consider these arguments, however, because the district court's finding that Rojas and Jayme did not intend to deceive is not clearly erroneous and, without proof of this element, the Monges are not entitled to recover for fraud.[5]

## IX.

The Monges maintain that the district court erred in overruling their objection to the bankruptcy court's proposed conclusion that Jayme did not commit fraud by non-disclosure in the sale and conveyance of the Thoroughbred Property. Under New Mexico law, a claim of fraud by non-disclosure requires a showing that a party to a transaction knew of material facts, had a duty to disclose those material facts, and remained silent. *Krupiak v. Payton*, 561 P.2d 1345, 1346 (N.M. 1977). A duty to disclose may arise from knowledge that the other party to a transaction is "acting under a mistaken belief" or from the defendant's possession of "superior knowledge that is not within the reach of the other party or could not have been discovered by the exercise of reasonable diligence." *Id.* The Monges contend that Rojas and Jayme had a duty to disclose to them the fact that the Thoroughbred Property was in foreclosure and that Jayme had filed for bankruptcy. The district court disagreed because the Monges could have discovered those facts through a title search and examination of public records.

We agree with the district court that there was no duty to disclose and

---

[5] The Monges never objected to the bankruptcy court's proposed conclusions that they did not rely upon Jayme's (mis)representations concerning good title and that even if they did, they suffered no damages as a result, because Jayme later corrected the problems with title and because they had title insurance. Proposed Findings at 99–100. Consequently, those issues are waived, and the Monges could obtain no actual relief even if we found that they did satisfy the requirements for a claim for fraud.

No. 15-50180

hence that the Monges have no claim for fraud by non-disclosure. The Monges cite no relevant cases in support of their position.[6] And their notion that they did in fact exercise "reasonable diligence" is flawed. They assert that they exercised reasonable diligence by having a title company perform a title search. They assert that the company discovered the non-disclosed information but failed to inform them of the results of the title search. Aside from any action they could bring against the title company (a matter as to which we express no opinion), the fact remains that the non-disclosed information was in fact discoverable through the exercise of reasonable diligence, even if it was not actually discovered by them.

## X.

The Monges maintain that the district court erred in overruling their objection to the bankruptcy court's proposed conclusion that Rojas and Jayme did not breach a duty of good faith and fair dealing. Unlike Texas,[7] New Mexico imposes a duty of good faith and fair dealing on parties to a contract. *Watson Truck & Supply Co. v. Males*, 801 P.2d 639, 642 (N.M. 1990). To prevail on this claim, the Monges must show "bad faith" or that Rojas and Jayme "wrongfully and intentionally used the contract to the detriment of the other party." *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 82 (N.M. 1993). This requirement is met if the Monges show that Rojas and Jayme entered into a contract without any intention of honoring it. *See Romero v. Mervyn's*,

---

[6] The decisions in *Daly v. Bernstein*, 28 P. 764, 766 (N.M. 1892) and *Steadman v. Turner*, 507 P.2d 799 (N.M. Ct. App. 1973), are inapposite because they deal with fraud by affirmative misrepresentation. The opinion in *Wirth v. Commercial Res., Inc.*, 630 P.2d 292 (N.M. Ct. App. 1981), is distinguishable because it deals with failure to disclose information about a physical aspect of the property (the availability of water) rather than with legal title.

[7] "Texas law does not impose a generalized contractual duty of good faith and fair dealing and, in fact, rejects it in almost all circumstances." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016) (citing *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983)).

No. 15-50180

784 P.2d 992, 1001 (N.M. 1989).

The district court concluded that the Monges had failed to show that Rojas and Jayme never intended to honor the lease agreement because Rojas and Jayme paid some rent during the term of the lease.[8]  District Court Order at 29.  "Had [Rojas and Jayme] subjectively intended to live on the property 'rent free' the whole time, they likely would not have paid [the Monges] any rent."  *Id.*  This is correct.

The Monges object that the district court's reasoning rests on an erroneous factual basis, but they have waived the argument.  The bankruptcy court proposed finding that Rojas and Jayme paid $12,568 in rent during the term of the lease agreement.  Proposed Findings at 39.  And the district court adopted that proposed finding, to which the Monges never objected in the district court.  They have thus waived any challenge to this finding, which, in any event, we would uphold as not clearly erroneous.

The judgment of the district court is AFFIRMED.

---

[8] According to proposed findings adopted without objection, Rojas and Jayme made $61,134 in rental payments after the expiration of the lease.